MRS. MAUD DUNIVANT, Plaintiff in Error, v. E. PLEW, Defendant in Error.

Western Section.   March 31, 1932.

Petition for Certiorari denied by Supreme Court, June 4, 1932.

Jno. M. Drane and Carl Graves, of Dyersburg, for plaintiff in error.

Louis Elkins, of Dyersburg, for defendant in error.

HEISKELL, J.  Plaintiff, Dr. E. Plew, sued Mrs. Maud Dunivant, defendant, in the Circuit Court of Dyer county for personal injuries alleged to have been sustained by him resulting from the operation of an automobile owned at the time of the accident by the defendant, Mrs. Maud Dunivant, and driven by her husband, J. D. Dunivant.

On the night of February 28, 1931, Dr. E. Plew was walking down a gravel road near the homes of the parties to this litigation and while walking along this road, it is alleged he was run into by the automobile of Mrs. Dunivant, driven at the time by her husband, J. D. Dunivant, and injured.  Pleas of not guilty and contributory negligence were interposed in behalf of the defendant and the case came on for trial before Special Judge Walter Draper and a jury. After consideration by the jury a verdict was rendered in favor of the plaintiff for $1875.

Defendant has appealed and assigned errors, as follows:

### I.

"The trial court erred in not granting the defendant a new trial in this case, as prayed in her motion, wherein it is charged that the court refused to allow the testimony of Dr. S. F. Hinson and other witnesses proposed to be introduced at the hearing of the cause to prove that there was fraud and collusion between the husband, J. D. Dunivant, and Dr. E. Plew, the plaintiff in said cause, the said testimony going to show that the accident grew out of pre-arranged and premeditated acts on the part of said Dunivant and Dr. E. Plew to bring about said accident and claim thereunder.

"It was an error on the part of the trial court to refuse the defendant the right to submit said testimony to the jury for its consideration, and to develop her case alòng this line."

## II.

"The trial court erred in not granting defendant's motion for a new trial, wherein it is alleged that the trial court erred in not admitting for consideration of the jury the testimony offered in her behalf to show fraud and collusion between the said J. D. Dunivant, husband of the defendant, and the plaintiff Dr. E. Plew to bring about said accident and claim thereunder, and after the refusal to admit said testimony in submitting the said issues of fraud and collusion to the jury for its consideration in his charge in the following words and figures, to-wit:

" 'There is another defense instituted in this case which could be made under the plea of not guilty, or under the plea of contributory negligence, and that is the defendant insists in the case that the plaintiff connived and fraudulently conspired with the driver of the car, or with the defendant, or her husband, to have himself injured, or that Dr. Plew knowing that this defendant had her car insured and knowing this car was coming down the highway had himself injured on purpose, perhaps without the knowledge of either the owner of the car or the driver of the car. If you find in the preponderance of the evidence in the case this to be true, if this is a frame-up and that Dr. Plew had himself injured on purpose, or knowing the car was coming down the road he purposely got in the way of it, even if the driver did not know it, or the owner of the car did not know it, if you find from the preponderancè of the proof here either one of those questions to be true then he could not recover, and your verdict would be for the defendant.'

"The trial court erred in this regard and the relief prayed for in her motion for a new trial should have been by the court granted."

## III.

"The trial court erred in not granting defendant's motion for a new trial; in this case, because of newly discovered evidence, as set up in her amended motion for a new trial, and in supporting affidavits attached thereto and made a part of same."

## IV.

"The court erred in not granting defendant's motion for a new trial, as prayed for, for the reason that the verdict of the jury is grossly excessive; and so excessive in fact, as to exhibit prejudice, passion and caprice on the part of the jury trying the case."

For the plaintiff it is insisted that these assignments should not be considered because the testimony referred to is not set out in the assignments nor the page of the record pointed out where the same can be found. This is true, but the omission is harmless. The testimony of Dr. Hinson is to be considered as a whole as it was all excluded, and it is just as easily found from the index as if the page of the record was given. Likewise the affidavits presented on the motion for new trial are just as easily and definitely located without any delay or inconvenience to the court, therefore we do not see fit to apply the rule invoked to exclude the consideration of these assignments.

The first assignment contends that it was error to exclude the testimony of Dr. Hinson by which it was sought to show that the plaintiff was making a fraudulent claim for damages, and assignment three insists that a new trial should have been granted defendant by reason of the newly discovered evidence as shown by certain affidavits presented on the motion for a new trial. Defendant was not in default in not discovering this newly discovered evidence, as S. R. Hall says he did not tell defendant's attorney about it until the day the affidavits were given, which was after the trial. Hinson's excluded testimony and these affidavits must be considered together and if together, they show sufficient competent evidence to take this issue of fraud to the jury, then it was error to refuse a new trial.

Mrs. Maud Dunivant does not figure in this case except as the owner of the car. She did not drive the car at all and was not in it at the time of the accident. Her husband, J. D. Dunivant, was the driver. While Mrs. Dunivant appears as the only defendant, it appears open and above board that the insurance company carrying liability insurance on her car is the real defendant. On account of the nature of the defense of fraud set up by defendant, the evidence of insurance could not be objected to as it was insisted that the insurance was part of the fraudulent scheme.

Dr. S. F. Hinson is a physician. He says that a few months before the accident Dr. Plew came to see him and said he wanted to make a trade. That he proposed to run over a man and get Dr. Hinson to treat the man, keep him in bed a long time and that he would give the doctor $100. Hinson says he told him he could not do anything like that, and that later Plew came to him again and said he proposed to run over a man or have a man run over him, that the insurance company would be responsible and that when he got the money he would divide up and Hinson says he told him he would not have anything to do with it.

The affidavit of S. R. Hall is as follows:

"S. R. Hall makes oath that Miss Mattie Lou Purvis writes insurance including automobile liability insurance; that she and affiant have an office together and that affiant assists her in the writing of insurance. He states that Dr. E. Plew for quite a while roomed in an upstairs room near affiant's office; that he and Miss Purvis were quite well acquainted with Dr. Plew and his habits. He states that some time along the last of 1930 or the first of 1931 to the best of affiant's memory, the said Plew told affiant that he knew where Miss Mattie Lou, referring to Miss Mattie Lou Purvis, could write some automobile liability insurance; that Jess Dunivant wanted a policy on his wife's car and that if Miss Mattie Lou would go after it she could get it and later said Plew came back and wanted to know if she had gotten that insurance and she said "no, she had not gotten it," and Plew said he would send him (Dunivant) in to see her. Later Jess Dunivant came in to see Miss Mattie Lou about writing the insurance but she declined to write it for him, got around it some way without writing same. Later on some time after Dr. Plew was hurt said Plew met him in town and he was pretty well drunk, seemed to be, and Plew laughed and told affiant "Miss Mattie Lou is on to her job all right. We did not get her company but got another." This occurred on the stairway going up to affiant's office in Newbern, Tennessee.

"This morning is the first time I have mentioned this matter to Mr. Drane, and the reason that I did so was that I wanted to see him myself this morning and he told me that he was in a hurry to go to Dyersburg; that he had a motion for a new trial in the Dr. E. Plew-Dunivant case. I then asked him about the case and laughed and asked him if it was over and he said yes and I then told him about what had happened about the insurance as set out in the above affidavit."

And this is the affidavit of Miss Purvis:

"Miss Mattie Lou Purvis makes oath in due form of law that some time in the latter part of 1930 Jess Dunivant came to see her on two different occasions about writing liability insurance on his wife's automobile in her office and once he talked to her about it on the stairway, but that she declined to write the business in a nice way as she did not think it desirable insurance—that she just got around it the best she could."

The proof shows that Dr. Plew was a man of bad character. His reputation for truth was bad. He had served a two year sentence in the penitentiary and at the time of the trial in this case was in prison under a ten year sentence for selling narcotics. He and J. D. Dunivant were intimate friends. Before the accident they lived not far apart

and afterwards lived in the same house. In addition to this, J. D. Dunivant is the only witness for plaintiff and testifies strongly in his favor. Plew being thoroughly impeached he may be said to have recovered on the strength of Dunivant's testimony. Besides there is some suggestion in the proof that plaintiff's physical condition after the accident may have been in part at least, due to his condition before. He says he suffered pain, but he had suffered from sciatica before. He claimed kidney injury, but he had been treated before this for gall stones.

We think the testimony of Dr. Hinson and the newly discovered evidence set out in the affidavits, presented on the motion for a new trial, was all competent to go to the jury in connection with the other facts and circumstances of the case on the question of fraud. If the testimony of Dr. Hinson alone was not sufficient to justify submitting this question to the jury, yet taken in connection with the affidavits presented on motion for new trial, we think there was evidence for which a new trial should have been granted. It was urged against Hinson's testimony that what Plew said to him was too long before the accident to be competent, but the testimony of Hall would have shown the same state of mind on the part of plaintiff just before the accident. In this connection it is worth noticing that the car of Mrs. Dunivant was registered in her name January 31, 1931 and the accident happened on February 28, 1931. Just when the insurance was taken out does not appear, but it must have been after January 31, and therefore could not have been long before February 28th. It might be contended by defendant that the insurance had been secured only in time for the accident.

The second assignment of error is based upon the contention that if the court was right in excluding the testimony of Dr. Hinson and thereby eliminating defendant's evidence of fraud and collusion, that then it was error to leave this question to the jury as the court did, telling the jury that it was one of the defenses in the suit. This contention is stronger when the newly discovered evidence was presented because the motion for new trial was denied and the record allowed to stand with the jury verdict against the defendant on the issue of fraud and collusion without any of defendant's evidence on the question being allowed to go to the jury. The trial judge in excluding the testimony of Hinson, said if there was fraud and collusion in the plaintiff's case that the defendant would still have his remedy, meaning of course by a suit in equity. This suggests a strong reason why the trial court should not allow the record to show this question submitted to and passed upon by the jury, at the same time that all evidence was excluded upon which the jury could have found the issue in favor of defendant.

We think the first, second and third assignments should be sustained, the case reversed and remanded for a new trial. This make it unnecessary to dispose of the fourth assignment which goes only to the amount of the judgment. The plaintiff will pay the costs of the appeal.